# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** | \| |
| | \| |
| **v.** | \|     **1:20-CR-196-AJT** |
| | \| |
| **REINA E. HERNANDEZ,** | \| |
| | \| |
| **Defendants.** | \| |

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
## OBTAINED FROM FACEBOOK, INC.

Defendant, Reina Elizabeth Hernandez (Hernandez), by counsel, respectfully moves this Court, pursuant to the Fourth Amendment to the United States Constitution, to suppress the records obtained from Facebook, Inc. (Facebook), including WhatsApp, LLC (owned by Facebook), based on the following reasons:  (1) the affidavits supporting the search warrants for such records lacked probable cause; (2) the search warrants lacked particularity and were overbroad; (3) the Facebook search warrants were based on stale information; and (4) the Facebook search warrants misrepresented or omitted material facts in their supporting affidavits.  Therefore, the search warrants were invalid.

Additionally, Hernandez moves this Court for a *Franks* hearing pursuant to *Franks v. Delaware* based on the misrepresentation and omission of material facts in the Facebook search warrants.

## BACKGROUND AND FACTS

In the summer of 2018, after several run-away attempts, a minor (minor) was placed in the Fairfax County Less Secure Facility (Shelter Care) by the Fairfax Juvenile & Domestic Relations Court.  On approximately August 27, 2018, minor ran away from

Shelter Care and was reported missing in Fairfax County.  Minor was involved in a

shoplifting incident at Potomac Mills Malls on September 4, 2018.  Then, law

enforcement recovered minor in Mount Rainier, Maryland on October 11, 2018, near

Hernandez's apartment complex.

During the time she was missing, minor said she was involved with gang members

from MS-13 in Prince William County, Virginia.  Minor said she was beaten with baseball

bats and caused to engage in prostitution.  She was taken to several locations in Virginia

and then to Maryland.  Minor believes she was taken to Hyattsville, Maryland to an

apartment with a man named Luis and a woman, believed to be Hernandez.  At

Hernandez's apartment, minor said she engaged in prostitution.  Minor believes she was

at Hernandez's apartment for approximately two weeks before law enforcement found

her on October 11, 2018.

### The Facebook Search Warrants

The Government sought a search warrant for Hernandez's Facebook records on

June 5, 2019, in conjunction with a search warrant for a total of eight Facebook accounts

(three for Hernandez, five for a co-defendant).  Hernandez had three Facebook accounts

which are identified by the last four numbers of the ID:  #7127, #0637, and #7141[1]

(named Noel Martinez).  In its affidavit for search warrant (FB affidavit), the

Government states generally that "there is probable cause to believe that the [Facebook]

accounts constitute and/or contain evidence, fruits, contraband, and instrumentalities of

---

[1] The FB affidavit contains the wrong account number for this account, which actually ends in #1412 (last digit missing), but #7141 will be used for this motion.

federal offenses." *FB Affidavit*, ¶ 4. Additionally, the affidavit alleges the Government "know[s] that MS-13 gang members and associates use cellular telephones and messaging applications (e.g. WhatsApp and Facebook messenger) to communicate with one another orally and via text messages before, during, and after engaging in criminal activities." *FB Affidavit*, ¶ 32. However, the FB affidavit contains no information showing a nexus between the alleged crimes and Hernandez's Facebook records.

The FB affidavit contains sufficient information to believe that a crime occurred. However, it does not contain facts supporting a fair probability that evidence of sex trafficking or conspiracy would be found in Hernandez's Facebook records. Nor does the FB affidavit claim that Hernandez's records were used as instrumentalities of a crime. In the entire FB affidavit, the Government only references Hernandez's Facebook records three times: (1) Hernandez's Facebook accounts are identified; (2) Minor was shown a picture of Hernandez for identification purposes obtained from an open source search of account #7141; and (3) the Government observed a picture of Hernandez wearing a dress (dress picture), similar to a dress minor wore while engaged in prostitution, in an open source search of account #7127.[2] *FB Affidavit*, ¶¶ 86, 87, 90.

The FB affidavit makes no attempt to link two out of three of Hernandez's accounts (#0637 and #7141) to the criminal allegations. Account #0637 is not discussed anywhere in the FB affidavit except to identify that Hernandez owns this account. *FB Affidavit*, ¶ 86. Likewise, the FB affidavit states that Hernandez owns

---

[2] This picture was in fact posted to account #0637, not the account number the Government identified in the FB affidavit, paragraph 90.

account #7141 and that minor identified Hernandez from a picture downloaded from an open source search of this account. *FB Affidavit*, ¶ 86, 87. The FB affidavit never explains why there is reason to believe that evidence of these alleged crimes would be found in either of these accounts.

The link between the alleged crimes and account #7127 is tenuous, based entirely on the dress picture. *FB affidavit*, ¶ 90. The dress picture was already in the Government's possession through an open source search. The FB affidavit does not explain why evidence of sex trafficking and conspiracy would be found in this account. Moreover, the FB affidavit misrepresented that the dress picture was obtained from account #7127. Based on discovery provided by the Government, the dress picture was posted to account #0637, not in account #7127.[3] Therefore, the entire basis to search account #7127 is a picture downloaded from an entirely different Facebook account. Further, the FB affidavit fails to mention that Hernandez posted the dress picture on December 15, 2017, ten months before minor was allegedly at Hernandez's apartment and eighteen months before the Government petitioned the Magistrate Judge for a search warrant.

In attachments A and B to the FB affidavit, the Government described the places to be searched and the particular things to be seized. *FB affidavit*, attach. A, B. The places to be searched were all three of Hernandez's Facebook accounts, without regards to dates or time frame, even though minor was only missing from August 2018 to

---

[3] Defense counsel reviewed every photograph in the search warrant returns for accounts #7127 and #0637; the dress picture does not appear in account #7127.

October 2018.  *FB affidavit*, attach. A.  This resulted in years of records being turned over to the Government.  The things to be seized were "all contact information," "all photoprints," "all neoprints," "all other communications and messages," "all IP logs," "the length of service," and "all privacy settings and other account settings."  *FB affidavit*, attach. B.  The Government essentially requested all information regarding Hernandez's Facebook accounts, whether related to the alleged crimes or not.

Finally, it is extremely unclear how sections I and II of Attachment B functionally work together.  Section I is entitled "Information to be disclosed by Facebook," while Section II is called "Information to be seized by the government."  *FB affidavit*, attach. B. It is unclear how Facebook will turn over "all information," but the Government will only seize certain things.  Regardless, the Government seized all information identified by Section I without regards to the limitations in Section II.  This appears to exceed the scope of the search warrant.

### The WhatsApp Search Warrant

The Government sought a search warrant for Hernandez's WhatsApp records on April 16, 2020, in conjunction with a search warrant for eleven other WhatsApp accounts, five Google accounts, three Microsoft accounts, and eight SnapChat accounts. In the affidavit for search warrant (WA affidavit), the Government identifies that one of the twelve WhatsApp accounts belongs to Hernandez.  *WA affidavit*, ¶ 2.  The WA affidavit follows the same outline as the FB affidavit.

Identical to the FB affidavit, the WA affidavit states generally "there is probable cause to believe that the [WhatsApp] accounts constitute and/or contain evidence, fruits,

contraband, and instrumentalities of federal offenses." *WA affidavit*, ¶ 4. Also, identical to the FB affidavit, the Government alleges it "know[s] that MS-13 gang members and associates use cellular telephones and messaging applications (e.g. WhatsApp and Facebook messenger) to communicate with one another orally and via text messages before, during, and after engaging in criminal activities." *WA affidavit*, ¶ 19. However, the WA affidavit contains no specific links between the alleged crimes and Hernandez's WhatsApp records.

The WA affidavit does not contain facts supporting a fair probability that evidence of sex trafficking or conspiracy would be found in Hernandez's WhatsApp records. The WA affidavit does not allege there is evidence in Hernandez's WhatsApp records or that she used WhatsApp to commit these crimes. The WA affidavit does not even mention Hernandez's WhatsApp records in relation to the alleged crimes. While the affidavit provides some generalities about criminals using messenger services, the only specific reference to Hernandez's WhatsApp account is as follows:

> 227. Open source inquiries by law enforcement reveals a WhatsApp account tied to Reina as +13017320765. The profile pictures depict full body images depicting an individual law enforcement has identified as **Reina**.
>
> 69

In attachments A and B to the WA affidavit, the Government describes the property to be searched and the particular things to be seized. *WA affidavit*, attach. A, B. The property to be searched was Hernandez's WhatsApp account records, without

regards to dates or time frame, even though minor was only missing from August 2018 to October 2018. *WA affidavit*, attach. A. Again, like the FB affidavit, the Government asked to seize "all identity and contact information," "all usernames," "all IP logs," "all photographs and images," "all privacy settings and other account settings," "all communications," etc. *WA affidavit*, attach. B. The Government essentially requested all information associated with Hernandez's WhatsApp account, regardless of the time frame or relation to the alleged crimes.

The WA Affidavit contains an Attachment B, just like the FB affidavit. Section I is entitled "Information to be disclosed by WhatsApp," while Section II is called "Information to be seized by the government." *WA affidavit*, attach. B. Again, there is no explanation of how WhatsApp will turn over "all information," but the Government will only seize certain things. But the information identified in Section I is in the Government's possession, not just the limited information identified in Section II. *WA affidavit*, attach. B. The scope of limitations in Section II were exceeded.

## ARGUMENT

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A search warrant must be based on probable cause, i.e., "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used against an accused. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

A search warrant issued by a magistrate is valid when it is supported by a finding of probable cause. Probable cause is determined by a "totality of the circumstances" and considers all evidence available at the time. *Gates*, 462 U.S. at 238. "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. There is a strong preference under the Fourth Amendment for searches pursuant to a warrant and courts should not invalidate them by interpreting affidavits in a "hypertechnical, rather than commonsense, manner." *Id.* at 236.

However, there are limits to this common-sense approach. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause" and wholly conclusory statements do not meet this requirement. *Id.* at 239 (citing *Nathanson v. United States*, 290 U.S. 41 (1933) (where affiant stated "he has cause to suspect and does believe" without factual support)). For example, an "officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate." *Id.* (citing *Aguilar v. Texas*, 378 U.S. 108 (1964)). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* Further, "[t]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *United States v. Carpenter*, 360 F.3d 591, 594-95 (6th Cir. 2004) (en banc).

To ensure that magistrates meet this requirement, "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Gates*, 462 U.S. at 239. Search warrants can be challenged on several grounds, including a lack of probable cause. *United States v. Leon*, 468 U.S. 897, 915 (1984). Magistrates can draw reasonable inferences from facts to support probable cause for a warrant, but "suppositions and guesswork cannot equate to a substantial basis for probable cause." *Anzualda v. Commonwealth*, 44 Va. App. 764, 775 (Va. Ct. App. 2005). If a magistrate issues a warrant not supported by probable cause, the warrant is invalid and subsequent searches and seizures are illegal. *Leon*, 468 U.S. at 915.

## I. The Affidavits for Search Warrants Lacked Probable Cause

"[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for … concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotations omitted). Reviewing courts "may not go beyond the information actually presented to the magistrate during the warrant application process." *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004)).

### A. The Facebook Affidavit

The FB affidavit did not provide the Magistrate Judge with a substantial basis to conclude there was probable cause for Hernandez's Facebook records. In other words, the FB affidavit did not provide a fair probability that there would be evidence of sex trafficking or conspiracy in Hernandez's Facebook records. The Government's wholly

conclusory statements are insufficient.[4]  *Gates*, 462 U.S. at 239.  These statements do not permit the Magistrate Judge to conclude that there is a substantial basis for probable cause.  *Id.*

The FB affidavit provides no nexus between the alleged crimes and Hernandez's Facebook records.  *Id.* at 238.  Of the three Hernandez Facebook accounts identified, the Government attempts to link only one, account #7127, to the alleged crimes. Account #0637 is only mentioned in the FB affidavit to allege that Hernandez owns this account.  *FB Affidavit*, ¶ 86.  Likewise, the FB affidavit simply alleges that Hernandez owns account #7141 with no connection to the alleged crimes.[5]  *FB Affidavit*, ¶ 86.  Ownership of these accounts, by itself, is not enough to justify probable cause to search them just because Hernandez was implicated in a crime generally.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").  That would be akin to arguing that there is no nexus requirement under the Fourth Amendment.

---

[4] The Government alleges "there is probable cause to believe that the accounts constitute and/or contain evidence, fruits, contraband, and instrumentalities of federal offenses" and it "know[s] that MS-13 gang members and associates use cellular telephones and messaging applications (e.g. WhatsApp and Facebook messenger) to communicate with one another orally and via text messages before, during, and after engaging in criminal activities." *FB affidavit*, ¶¶ 4, 32.  The Government makes these statements in both warrants.

[5] The FB affidavit mentions that minor identified Hernandez from a picture downloaded from an open source search of account #7141, but again, this is no attempt to show a nexus to the alleged crimes. *FB Affidavit*, ¶ 87.

Furthermore, the dress picture does not, by itself, provide probable cause to search Facebook account #7127.  Setting aside that the dress picture was not posted in a different account, which will be discussed below, the picture does not show a fair probability that evidence of sex trafficking or conspiracy would be found in that account. *Gates*, 462 U.S. at 238.  The dress picture was posted eighteen months before the Government sought a search warrant.  This was before minor was ever alleged to be in Hernandez's apartment.  Moreover, the Government never alleges that Hernandez used Facebook to communicate with anyone else in the conspiracy or used Facebook to facilitate sex trafficking.  The FB affidavit did not provide a substantial basis for the Magistrate Judge to determine probable cause.  *Id.* at 238-39.

## B.  The WhatsApp Affidavit

Similarly, the WA affidavit did not provide the Magistrate Judge with any basis, and certainly no substantial basis, to conclude there was probable cause for Hernandez's WhatsApp records.  The WA affidavit follows the Government's similar game plan of implicating Hernandez in several crimes but making no connection or nexus to her WhatsApp account records.  The WA affidavit, like the FB affidavit, recounts the entire course of the conspiracy with no information regarding how Hernandez's WhatsApp account is connected to the alleged crimes or why there would be evidence of the alleged crimes in Hernandez's WhatsApp records.  The following is the only reference to Hernandez's WhatsApp account in the WA affidavit:

> 227. Open source inquiries by law enforcement reveals a WhatsApp account tied to **Reina** as **+13017320765**. The profile pictures depict full body images depicting an individual law enforcement has identified as **Reina**.
>
> 69

*WA affidavit*, ¶ 227. There is simply no information to allow the Magistrate Judge to make the determination of probable cause. *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow <u>that official</u> to determine probable cause") (emphasis added). In the WA affidavit, the Government does not even attempt to show a nexus.

## II. The Search Warrants Lacked Particularity and Were Overbroad

The Fourth Amendment requires that search warrants "particularly describ[e]" the "things to be seized." U.S. Const. amend. IV. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *Cf. Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (limiting *Marron* through the "plain view" doctrine). "That condition ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Griffith*, 867 F.3d 1265, 1275 (DC Cir. 2017) (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). A warrant with an

"indiscriminate sweep" is "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486 (1965); *see also United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988).

"The particularity requirement [of the Fourth Amendment] is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010). But when an officer's discretion is unfettered – when there is no limitation or no description as to what specific records can be seized – then courts have found warrants constitutionally deficient for lack of particularity. *See United States v. Cardwell*, 680 F.2d 75, 77–78 (9th Cir. 1982) (collecting cases).

For example, in *Roche v. United States*, the warrant authorized the seizure of any books, records, and documents "which are evidence, fruits, and instrumentalities of the [crime]." 614 F.2d 6, 7 (1st Cir. 1980). The court found this limitation to be "no limitation at all." *Id*. at 8. Similarly, in *United States v. Cardwell*, the Ninth Circuit held "the only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201. That is not enough." 680 F.2d 75, 77 (9th Cir. 1982).

Additionally, the Fourth Amendment "requires that a warrant be no broader than the probable cause on which it is based." *United States v. Hurwitz,* 459 F.3d 463, 473 (4th Cir. 2006) (quoting *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002)); *see also United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (a search warrant is overbroad if its "description of the objects to be seized is . . . broader than can be

justified by the probable cause upon which the warrant is based.").  Thus, for example, a warrant that purports to "authorize the seizure of, essentially, all documents" may exceed the scope of probable cause.  *United States v. Wey*, 256 F. Supp. 3d 355, 393 (S.D.N.Y. 2017).  Likewise, a warrant to search and seize "all digital devices" at a house may be overbroad.  *In the Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1014 (N.D. Cal. 2019); *see also Griffith*, 867 F.3d at 1275 (holding a warrant invalid because of "its overbreadth in allowing the seizure of all electronic devices found in the residence.").

These constitutional concerns are amplified in the context of modern cell phones and computers.  As the Supreme Court reasoned in *Riley v. California*, 134 S Ct. 2473 (2014), because of the vast array of data that individuals can and do store on their cell phones, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house."  *Id.* at 2491.  They contain "a digital record of nearly every aspect of [users'] lives — from the mundane to the intimate."  *Id.* at 2490.  Thus, electronic devices, "[w]ith all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Id.* at 2494–95 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).  This concern is much graver with private accounts maintained by social media companies, which can store far more data than a cell phone.

### A. The Facebook and WhatsApp Search Warrants

The search warrants will be discussed together because they used an identical format.  Both warrants lacked particularity and were overbroad.  These search warrants with their "indiscriminate sweep" are exactly the type of "wide-ranging exploratory

14

searches the Framers intended to prohibit." *Stanford v. Texas*, 379 U.S. at 486; *Griffith*, 867 F.3d at 1275.  The warrants do not identify "the items to be seized by their relation to designated crimes." *Williams*, 592 F.3d at 519.  For each social media company, and for all the accounts, the warrants simply request all data associated with the account. The affidavits discuss, in a wholly conclusory fashion, that the Government believes MS-13 uses messaging applications of services like WhatsApp and Facebook.  *FB affidavit*, ¶ 32, *WA Affidavit*, ¶ 19.  However, the affidavits offer no nexus between the alleged crimes and data such as "all photographs," all IP logs," "the length of service" and "source of any payments associated with the service," "all privacy settings," etc.  *FB affidavit*, attach. B.  The search warrants essentially provided the Government with unfettered discretion to seize everything in Hernandez's social media accounts, without any limitations.  The "warrants of the kind at issue here unnecessarily authorize precisely the type of exploratory rummaging the Fourth Amendment protects against."  *See United States v. Shipp*, 392 F. Supp. 3d 300, 311 (E.D.N.Y. 2019).

Although the Government was only permitted to "seize" certain information, the search warrants allowed it to search all the data for Hernandez's accounts.  *See FB affidavit*, attach. B.  Yet, the search warrants "did not set any limits on what the Government was required to do with the information that they collected and searched, but did not 'seize.'"  *Shipp*, 392 F. Supp. 3d at 311.  Moreover, the Government did not follow the specific procedure it declared in Attachment B to the affidavits.  *Cf. U.S. v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015) (agents segregated responsive material and sealed defendant's entire account in evidence bag, inaccessible without a new warrant).

The Government retained the entire data file for all three of Hernandez's Facebook accounts and her WhatsApp account, not the limited seizures delineated in Section II of Attachment B.  Therefore, the Government exceeded the scope of the search warrants.  Generally, when law enforcement exceeds the scope of a search warrant, "the improperly-seized evidence will be suppressed; the properly-seized evidence remains admissible."  *United States v. Squillacote*, 221 F.3d 542, 556 (4th. Cir. 2000).  However, "even properly seized evidence may be excluded when the officers executing the warrant exhibit a flagrant disregard for its terms." *Id.* (quoting *United States v. Ruhe*, 191 F.3d 376, 383 (4th Cir. 1999)).

Finally, the search warrants included no time limitation, which allowed the Government to search Hernandez's accounts from inception.  Facebook provided the Government with over ten years of Hernandez's Facebook account records, between the three account numbers.  However, the Government's alleged probable cause only extended to a very narrow period of time:  August 27, 2018 to October 11, 2018.  *FB affidavit*, ¶¶ 36, 41.  By requesting Facebook to disclose Hernandez's Facebook account records from inception, the Government's search request was much "broader than the probable cause on which it is based."  *Hurwitz*, 459 F.3d at 473.

## B. The Good-Faith Exception Does Not Apply

Courts have held these search warrants to be overbroad for years but given law enforcement a pass based on good faith.  *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 U.S. Dist. LEXIS 20319, at *28 (N.D. Iowa Feb. 6, 2020); *Shipp*, 392 F. Supp. 3d at 307; *United States v. Chavez*, 423 F. Supp. 3d 194, 207 (W.D.N.C. 2019); *United*

*States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 U.S. Dist. LEXIS 159077, at *13 (E.D. Ky. Aug. 30, 2019); *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (although Facebook warrant likely overbroad, good-faith exception applied). Those warrants were identical to the warrants in this case. They required Facebook to disclose virtually all data associated with a Facebook account, regardless of time frame or whether it was evidence of a crime, and then trusted the Government to "seize" only those records qualifying as "fruits, evidence, and instrumentalities" of a crime. This practice has occurred repeatedly over the years and still occurs today. After a certain point, good faith turns into exploitation. It is no longer true that "the exclusionary rule … would thus serve little deterrent purpose." *Shipp*, 392 F. Supp. 3d at 312.

In *Leon*, the Supreme Court established a good-faith exception to the exclusionary rule under which evidence obtained pursuant to an invalid search warrant does not need to be excluded if the officer's reliance on the warrant was "objectively reasonable." *Leon*, 468 U.S. at 922-23. Usually, "'a warrant issued by a magistrate . . . suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Id.* at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). However, there are four situations in which an officer cannot be found to have acted with objective reasonableness such that the good-faith exception does not apply:

> (1) the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
> (2) the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
> (3) an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) a warrant [is] so facially deficient i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (internal quotation marks omitted) (quoting *Leon*, 468 U.S. at 923).

Courts have refused to apply the good-faith exception in a variety of circumstances. *United States v. Wilhelm*, 80 F.3d 116, 123 (4th Cir. 1996) (magistrate acted as rubber stamp in approving "bare bones" affidavit; officer could not have reasonably relied on warrant based on unknown, anonymous tip in which officer corroborated almost nothing); *United States v. Sykes*, No. 5:15-CR-00184-FL-5, 2016 U.S. Dist. LEXIS 162718, at *63-64 (E.D.N.C. Aug. 22, 2016) ("the third exception precluding application of the good faith exception" applied for "an affidavit containing the vague allegations of an anonymous tipster without significant corroboration."); *United States v. Shanklin*, No. 2:12-CR-162-RAJ, 2013 U.S. Dist. LEXIS 161947, at *26 (E.D. Va. Nov. 13, 2013) (declining to apply the good-faith exception because the affidavits were "so lacking in indicia of probable cause as to render an officer's belief in its existence unreasonable" because "the detective attempted to establish probable cause using conclusory and speculative assertions.").

In this case, the good-faith exception should not be applied to Hernandez's search warrants because the affidavits were "so lacking in indicia of probable cause" that officers could not reasonably rely on them. *Leon*, 468 U.S. at 923. After years of courts finding these warrants overbroad, law enforcement is aware that time frame and type of information requested from Facebook (or any social media company) should be limited.

*See e.g.*, *Shipp*, 392 F. Supp. 3d at 307. The Government's use of wholly conclusory and speculative statements it the affidavits, *FB affidavit*, ¶¶ 4, 32, *WA Affidavit*, ¶¶ 4, 19, were attempts "to endue the affidavit with the appearance of genuine substance." *See Wilhelm*, 80 F.3d 116, 123. The affidavits made no attempt whatsoever to explain the nexus between most of the records sought, Hernandez's WhatsApp records and Hernandez's Facebook accounts #0637 and #7141, and the alleged crimes. *Gates*, 462 U.S. at 238. The nexus with Hernandez's Facebook account #7127 is speculative at best based on the dress picture, which was posted eighteen months before the warrant was requested. The agent's reliance on these affidavits was unreasonable and the scope was deliberately exceeded when law enforcement intentionally disregarded the two-part procedure declared in Attachment B to the affidavits. *Cf. Flores*, 802 F.3d at 1045. Good faith should not be available to the Government.

### III. The Facebook Affidavit was Based on Stale Information

"[T]here is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). "A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *McCall*, 740 F.2d at 1335-36 (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)). "Consequently, evidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *Id.* at 1336.

In the situation where "the warrant itself may be suspect because the information on which it rested was arguably too old to furnish 'present' probable cause," a court

"must determine whether information sufficient to constitute probable cause was ever presented." *Id.* A court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.*

The length of the alleged criminal activity was less than two months, occurring from August 27, 2018 to October 11, 2018. Minor believes she was at Hernandez's apartment for approximately two weeks before she was found, or near the end of September 2018. The dress picture was posted to Hernandez's Facebook account in December 2017, almost ten months before minor alleged arrived at her apartment and eighteen months before law enforcement sought a search warrant in June 2019. By this time, the dress picture was stale and not "so closely related to the time of the issue of the warrant as to justify a finding of probable cause." *McCall*, 740 F.2d at 1335-36.

## IV. The Facebook Affidavit Contained Material Misrepresentations & Omissions

In *Franks*, "the Supreme Court held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit. The *Franks* Court recognized a strong 'presumption of validity with respect to the affidavit supporting the search warrant,' and thus created a rule of 'limited scope.'" *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal citations omitted). "The rule requires that a dual showing be made which incorporates both a subjective and an objective threshold component." *Colkley*, 899 F.2d at 300.

To obtain a hearing, first an accused must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard

for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Second, if the false or reckless statements are necessary to the finding of probable cause, the Fourth Amendment requires that the accused be entitled to a hearing. *Franks*, 438 U.S. at 156. An accused's allegations must be accompanied by a detailed offer of proof and should point to the specific portions of the affidavit claimed to be false. *Id.* at 171. "The *Franks* test also applies when affiants omit material 'facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986); *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016); *Colkley*, 899 F.2d at 300.

In Hernandez's case, the Government made enough errors to demonstrate a reckless disregard for the truth. The FB affidavit alleges that Hernandez's third Facebook account (Noel Martinez) ends in #7141, when the correct account number ends in #71412. *FB affidavit*, ¶ 86. Additionally, the FB affidavit omits the date the dress picture was posted, which is relevant to the probable cause determination. *FB affidavit*, ¶ 90. Finally, the FB affidavit alleges that the dress picture was posted to account #7127. *FB affidavit*, ¶ 90. However, the dress picture was actually posted in account #0637. These errors, taken together with the limited nexus information provided in the FB affidavit, show a reckless disregard for the truth in order to investigate this case. The omitted and erroneous facts are vital to a finding of probable cause based on the FB affidavit. *Franks*, 438 U.S. at 156. Therefore, Hernandez request that this Court order a hearing pursuant to *Franks*.

## CONCLUSION

Hernandez respectfully moves this Court to grant her Motion and suppress all evidence obtained from Facebook, Inc., including the WhatsApp records.  Hernandez moves this Court to hold that:  (1) the affidavits supporting the search warrants for such records lacked probable cause; (2) the search warrants lacked particularity and were overbroad; (3) the Facebook search warrants were based on stale information; and (4) the Facebook search warrants misrepresented or omitted material facts in their supporting affidavits.  Therefore, the search warrants were invalid.

Finally, Hernandez moves this Court for a *Franks* hearing pursuant to *Franks v. Delaware* based on the misrepresentation and omission of material facts in the Facebook search warrants.

Respectfully Submitted,
REINA ELIZABETH HERNANDEZ
By Counsel

Yancey Ellis (VSB 70970)
Carmichael Ellis & Brock, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
703.684.7908
yancey@carmichaellegal.com

## CERTIFICATE OF SERVICE

I certify that on July 23, 2021, I filed this pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

_Yancey Ellis_
Yancey Ellis